UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BRADLEY SCOTT WARREN,** and
**TONI WARREN**,

Debtors.

Case No. **07-60695-13**

# MEMORANDUM OF DECISION

At Butte in said District this 5th day of October, 2007.

In this Chapter 13 case, in which the Trustee objected to confirmation on the grounds the Debtors deducted sale expenses from the sale of real property in calculating their disposable income under 11 U.S.C. § 1325(b) (Docket No. 21), the Court overruled the Trustee's objection at hearing held on September 21, 2007. Although the Court overruled the Trustee's objection, the Court directed the Debtors to amend their Form 22C to account for the gain or loss from their sale of property, in the same manner as though they were filling out their federal income tax Form 1040, including applicable schedules and related forms. The Court advised the parties that it would enter this Memorandum of Decision setting forth its reasoning. This memorandum contains the Court's findings of fact and conclusions of law to this Court's Order, Docket No. 23, entered September 24, 2007.

The facts are not in dispute. Bradley Warren and Toni Warren (together "Warrens") filed a joint Chapter 7 petition on June 14, 2007, with their Schedules and Statement of Financial Affairs. Warrens filed a motion to convert the case to Chapter 13 on June 29, 2007, with updated

1

Schedules, Statements and Form 22C. The Debtors' response to question 10a on their Statement of Financial Affairs includes a transfer by Bradley Warren of his equity in 56 unimproved acres of real property at Dearborn, MT, in exchange for $3,000.00.

The case was converted by Order entered on July 2, 2007. Warrens filed their Chapter 13 Plan on July 11, 2007, proposing monthly plan payments in the amount of $125.00 for sixty (60) months. Warrens' original Form 22C showed an above-median income at lines 15 and 60, and therefore a 5-year commitment period at Line 17. Monthly disposable income was calculated at Line 58 in the amount of negative $19.55.

The hearing on confirmation was set for September 21, 2007. The Chapter 13 Trustee filed an objection to confirmation on September 17, 2007, on the grounds Debtors failed to include income from the sale of real property in their disposable income calculation and thus failed the "disposable income" requirement of 11 U.S.C. § 1325(b). Debtors filed a memorandum in response to the Trustee's objection on September 20, 2007, with a copy of the contract for deed documenting their sale of real property. Debtors' memorandum contends that they should be entitled to deduct the basis from the amount they received from the sale of their real property as allowed under pertinent Internal Revenue Code ("IRC") provisions, Title 26, U.S.C. Debtors argue that they suffered a net loss on their sale of property in the amount of $3,853.30.

The Court overruled the Trustee's disposable income objection at the hearing, but ordered the Debtors to amend their Form 22C within 10 days to account for the gain or loss from the sale

as if they were filling out a Form 1040 and related forms and schedules[1]. Confirmation was reset for October 12, 2007.

## DISCUSSION

The Trustee's objections raise the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments to unsecured creditors under the plan.

*See In re Sutton*, 19 Mont. B.R. 220, 227-28 (Bankr. D. Mont. 2001) (construing § 1325(b)(1)(B) prior to 2005 revisions).

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). BAPCPA became effective for purposes of the instant case on October 17, 2005. Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly

---

[1]The Debtors filed their amended Form 22C on October 1, 2007, showing a net capital loss on line 9 of page 1 in the amount of $642.00, and reducing their total income at line 11 to $3,598.00. Debtors attached a Form 1040 Schedule D ("Capital Gains and Losses") to their amended Form 22C showing a sale of 56 acres located at Dearborn, MT, on 4/30/2007 for a sale price net of $36,647.00 and a cost basis of $40,500.00, leaving a loss in the amount of $3,853.00 net long term loss. At Part II, "Calculation of § 1325(b)(4) Commitment Period", Debtors annualized income at line 15 was calculated as $43,176.00, which was below the applicable median family income for Montana, and as a result the commitment period at line 17 was marked as 3 years.

income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —

>  (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

>  (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

>  (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*In re Tuss*, 360 B.R. 684, 691 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241-42 (Bankr. D. Mont. 2006).

"Current monthly income" is defined at 11 U.S.C. § 101(10A):

The term "current monthly income" –

>  (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –

>>  (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

>>  (ii) the date on which current income is determined by the court for purposes of this title if the debtor foes not file the schedule of current income required by section 521(a)(1)(B)(ii); and

>  (B) includes any amount paid by any entity other than the debtor

4

>(or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

The Chapter 13 Trustee's objection to confirmation contends that Debtors sold real property and omitted their income received from the sale, thus failing to satisfy the disposable income test. The Trustee's position in this and other cases, including *In re Featherston*, 07-60296-13, appears to be that debtors may not deduct expenses from proceeds from liquidation of assets under § 101(10A) and 1325(b), because those statutes do not provide for such deduction and debtors are bound by the statutory language. In *Featherston*, the Trustee cited an article by Hon. Eugene R. Wedoff's article "*Means Testing in the New § 707(b)*", AM. BANKR. L.J., Vol 79, Issue 2, p. 231, as authoritative. Judge Wedoff's article states at 244-45:

>Paragraph A of § 110(10A)[2] sets out its general rule that all "income" received by the debtor(s) should be included in calculating current monthly income. There is no definition of "income" in the Bankruptcy Code. However, because § 110(10A)(A) distinguishes between "income from all sources" and "taxable income," it appears to reflect the distinction in the Internal Revenue Code between "gross income," and "taxable income." Accordingly, the Internal Revenue Code should provide general guidance for determining the "income" used in § 110(10A)(A). That guidance includes a long list of items that constitute "income," such as compensation for services, business earnings, *gains on dealing in property*, interest, rents, royalties, dividends, alimony and maintenance, pensions, prizes and awards, and unemployment compensation.

(Emphasis added and footnotes omitted).

---

[2] The citation to § 110(10A) is a typo, and should read § 101(10A) throughout the above-quoted excerpt.

At the hearing the Court noted that several sections of the Internal Revenue Code ("IRC") provide guidance in determining income. The Chapter 13 Trustee did not explain why "income" in § 101(10A) and § 1325 should have a different definition than "income" as defined under other federal statutes such as the IRC, and cites no case authority. "Income" under the Internal Revenue Code is the subject of numerous statutes, and case law construing the term. For example 26 U.S.C. § 61(a)(3) specifically includes in the definition of gross income "gains derived from dealings in property." As noted by Judge Wedoff, § 61(a) of Title 26, U.S.C., generally defines gross income. *See* § 61(a)(1) through 61(a)(15). Section 61(b) specifically provides: "For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following)." One further needs to consider the general basis rules provided in § 1011 and in the following sections to calculated the gain or loss on the disposition of property required under 26 U.S.C. § 1001. As an example, lines 7 through 21 (and accompanying Schedules) of Form 1040 for 2006 contain the calculations for gross income (total income) on line 22. Additional regulations promulgated the U.S. Department of Treasury at 26 C.F.R. § 1.61-1, in general, and at § 1.61.6, in particular to the issue presented in this case, are instructive.

Section 1.61-1 generally provides:

(a) General definition. Gross income means all income from whatever source derived, unless excluded by law. Gross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, meals, accommodations, stock, or other property, as well as in cash. Section 61 lists the more common items of gross income for purposes of illustration. For purposes of further illustration, § 1.61-14 mentions several miscellaneous items of gross income not listed specifically in section 61. Gross income, however, is not limited to the items so enumerated.

Section 1.61-6 specifically provides:

(a) In general. Gain realized on the sale or exchange of property is included in gross income, unless excluded by law. For this purpose property includes tangible items, such as a building, and intangible items, such as goodwill. *Generally, the gain is the excess of the amount realized over the unrecovered cost or other basis for the property sold or exchanged*. The specific rules for computing the amount of gain or loss are contained in section 1001 and the regulations thereunder. . . . (Emphasis added).

When considering capital assets as defined in 26 U.S.C. §§ 1221 and 1231, or otherwise by the I.R.C., capital gains and losses should be determined by the provisions of the appropriate I.R.C. code sections and regulations.

The United States Supreme Court in *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. 509, 517-20, 41 S.Ct. 386, 388-89, 65 L.Ed. 751 (1921), discussed the meaning of "income" under versions of the federal Income Tax Act, the Corporation Excise Tax of 1909, and the Sixteenth Amendment to the United States Constitution and concludes that "income" was defined as "the gain derived from capital, from labor, or from both combined". 255 U.S. at 517, 41 S.Ct. at 388. That definition was "frequently approved" and received an addition so that it read: "'Income may be defined as the gain derived from capital, from labor, or from both combined,' *provided it be understood to include profit gained through a sale or conversion of capital assets.' Eisner v. Macomber,* 255 U.S. 189, 207." *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. at 517-18, 41 S.Ct. at 388 (emphasis in original). The Court wrote that with the addition 'there would seem to be no room to doubt that the word [income] must be given the same meaning in all of the Income Acts of Congress that was given to it in the Corporation Excise Tax Act and that what that meaning is has now become definitely settled by decisions of this court." *Id.* at 519, 41 S.Ct. at 389. The Court went on to specify that the gain taxed in the particular case was the amount

7

realized from the sale (of stock), "*less the capital investment*" . . . is the "gain or profit" from an investment. *Id*. at 519-20, 41 S.Ct. at 389 (emphasis added). As recently as this current year the United States Tax Court continues to cite *Merchants' L. & T. Co. v. Smietanka* for its "accepted definition of income" to include gain or profit. *Quartemont v. C.I.R.*, 2007 WL 397073 (U.S. Tax Ct.). The United States Tax Court, in *Estate of Dorn v. C.I.R.*, 54 T.C. 1651, 1654-55 (1970), *acq.*, 1971-2 C.B. 1 [1971 WL 125182], in discussing gross income with respect to dealings in property stated:

> Gross income with respect to dealings in property is defined as the 'gain' from such dealings. Sec. 61(a) (3). The term 'gain,' in turn, is described as the amount realized upon sale of the property less its adjusted basis. Selling expenses, whether viewed as a reduction of the amount realized or an addition to basis, reduce the amount of gain and hence the gross income resulting from the transaction. Statutory deductions, on the other hand, do not affect gross income but are subtracted therefrom in determining taxable income.

The Chapter 13 Trustee provides no authority, or other reason, why this Court should depart from Judge Wedoff's analysis and long-settled United States Supreme Court authority defining income as including gain or profit from sale of property, which in the instant case involved reducing the sale price by the investment just as in *Merchants' L. & T. Co. v. Smietanka*, 255 U.S. at 519-20, and Tax Court authority determining how "gain" is determined. Accordingly, in determining "current monthly income" under 11 U.S.C. § 101(10)(A) and disposable income under 11 U.S.C. § 1325(b), this Court will follow the longstanding definitions of "income" and of "gross income" as including "gains derived from dealings in property" and permit debtors to deduct basis and allowable expenses under the IRC as though they were preparing their Form 1040, with related schedules and forms. *See* 26 U.S.C. § 61(a)(3), 26 C.F.R § 1.61-6(a) and *Estate of Dorn*, 54 T.C. at 1654-55.

8

As noted above the Court has previously ruled on this issue and this memorandum provides the Court's reasoning for its decision entered in this case as Docket No. 23.

BY THE COURT

*Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana